# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETER GAKUBA, #M52946, | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 19-cv-01273-NJR ) |
| MR. HENDERSON, VIENNA PRISON, JOHN DOE, *Dietary Director*, GRETA SMITH, PENNY GEORGE, DR. BIRCH, SERINA LANE, [1] SARAH ROBERTSON, MATTHEW SWELLS, TRAVIS BAYLER, IDOC, and ROB JEFFREYS, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

**ROSENSTENGEL, Chief Judge:**

This case was severed from *Gakuba v. Swells et al.,* No. 19-cv-01081-SMY, on November 19, 2019. (Doc. 1). It contains the claim designated as Count 6 in the original case, described as an Eighth Amendment deliberate indifference claim against Mr. Henderson for refusing to place Gakuba on a no-seafood diet despite his allergies. Along with Count 6, Gakuba's Motion for Equitable Relief requesting a temporary restraining order and preliminary injunction was filed in this case. (Doc. 5). Gakuba was given until January 23, 2020, to notify the Court whether he wished

---

[1] The Clerk of Court is directed to change the name of defendant listed as Sarah Lane to Serina Lane. (*See* Doc. 13, p. 1).

1

to proceed with this action. (Doc. 12). On December 30, 2019, Gakuba filed a First Amended Complaint, along with another motion requesting emergency injunctive relief. (Docs. 13 and 14). The Court construes these filings as signifying that he wishes to proceed with this lawsuit, (*see* Doc. 13, p. 2), and therefore, the First Amended Complaint[2] is now Court for preliminary review pursuant to 28 U.S.C. § 1915A.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). Because Gakuba also seeks emergency injunctive relief, (Doc. 14), the Court will take up this matter without delay. *See Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680 (7th Cir. 2012).

## THE FIRST AMENDED COMPLAINT

Gakuba alleges the following in the First Amended Complaint (Doc. 13) and Motion for Equitable Relief (Doc. 5)[3]: Gakuba, currently in custody at Vienna Correctional Center ("Vienna"), has a documented seafood allergy. (Doc. 13, p. 2; Doc. 5, p. 1). Upon his arrival at Vienna, he spoke with the Dietary Supervisor, Henderson, about his seafood allergy. (Doc. 13, p. 3). Gakuba was placed on a kosher diet, which includes the options of prepackaged turkey

---

[2] The First Amended Complaint supersedes and replaces the original Complaint, rendering it void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004).
[3] Because it appears that Gakuba is relying on statements made in the First Amended Complaint and Motion for Equitable Relief in asserting his claims, the Court is construing the allegations in these pleadings together. *See Otis v. Demarass,* 886 F.3d 639, 644 (7th Cir. 2018).

breast; chicken breast, Salisbury steak, spaghetti, or fish fillet. (*Id.* at p. 4). On November 1, 2019, he was served fish for two successive days. (Doc. 5, p. 1). Gakuba met with Nurse Practitioner Smith regarding his allergy, who issued an order to the Vienna dietary services to stop serving him fish. (*Id.*). He continued, however, to receive the fish option at meals. (*Id.*). Gakuba met with Smith again, who told him that Healthcare Director George, with the agreement of Dr. Birch, overruled Smith's order. (*Id.* at p. 2). Gakuba sought to meet with John Doe, the Dietary Director. John Doe told Henderson to show Gakuba the Illinois Department of Corrections ("IDOC") regulations. (Doc. 13, pp. 3-4). Gakuba continues to be served seafood three to four times a week. (*Id.* at p. 2). Henderson has told him that he will not stop serving him seafood because of labor costs in food preparation. (*Id.* at p. 3).

After filing this lawsuit, Henderson began to retaliate against Gakuba and gave him spoiled juices, filthy lettuce, rotten apple, waterlogged bagels, smashed crackers, and once a spider in his cereal. (*Id.* at pp. 4-5). Henderson also threatened to file false disciplinary tickets against him.(*Id.* at p. 5).

**PRELIMINARY DISMISSALS**

Gakuba includes Vienna Prison and IDOC in his list of defendants, but both Defendants will be dismissed with prejudice. Gakuba cannot maintain his suit against the IDOC, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995).

Likewise, the Vienna Correctional Center, which is a division of the Illinois Department of Corrections, is not a "person" within the meaning of the Civil Rights Act, and is not subject to a Section 1983 suit. *See Will*, 491 U.S. at 71.

The Court also notes that in the First Amended Complaint, Gakuba makes the claim that Defendants were decision "makers [with] authority to overrule subordinate malfeasance." (Doc. 13, p. 5). Wardens and administrators cannot be held liable for the unconstitutional acts of another person under their authority. The doctrine of *respondeat superior* (supervisory liability) is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). To the extent Gakuba is claiming that Defendants are liable based on their supervisory position, such claims are dismissed with prejudice.

## DISCUSSION

Based on the allegations in the First Amended Complaint, the Court designates the following Counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Henderson, John Doe Dietary Director, Greta Smith, Penny George, and Dr. Birch for refusing to place Gakuba on a no-seafood diet despite his allergies.

**Count 2:** Conspiracy claim against Henderson, John Doe Dietary Director, Greta Smith, Penny George, Dr. Birch, Serina Lane, Sarah Robertson, Matthew Swells, Travis Bayler, and Rob Jeffrys for conspiring to violate Gakuba's Eighth Amendment and Fourteenth Amendment rights and to commit gross negligence by denying his grievances.

**Count 3:** Fourteenth Amendment equal protection claim against Henderson, John Doe Dietary Director, Greta Smith, Penny George, and Dr. Birch.

**Count 4:** Eighth Amendment cruel and unusual punishment claim against Henderson, John Doe Dietary Directory, Greta Smith, Penny George, and Dr. Birch for serving Gakuba seafood three to four

|   | times a week resulting in him missing meals and causing malnourishment. |
|---|---|
| **Count 5:** | Negligence claim in violation of Illinois state law against Henderson, John Doe Dietary Director, Greta Smith, Penny George, and Dr. Birch for serving Gakuba seafood. |
| **Count 6:** | Intentional infliction of emotional distress claim in violation of Illinois state law against Henderson, John Doe Dietary Directory, Greta Smith, Penny George, and Dr. Birch. |
| **Count 7:** | First Amendment claim against Henderson, John Doe Dietary Director, Serina Lane, Sarah Robertson, and Matthew Swells for retaliating against Gakuba for filing lawsuits. |

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the Twombly[4] pleading standard.**

## Count 1

To prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno* v. *Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citations and quotation marks omitted); *see also Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010).

It is not entirely clear at this point whether Gakuba suffers from a serious medical condition, as he has not included any details regarding his allergic condition such as necessary medication or symptoms and reactions he experiences when he ingests seafood. Construing the First Amendment Complaint liberally in Gakuba's favor, however, the Court finds that Count 1

---

[4] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

5

will proceed against: (1) Henderson who rejected Gakuba's request for a no-seafood diet and continued to serve him seafood meals; (2) John Doe Dietary Directory for disregarding the dietary order; (3) Healthcare Directors George and Dr. Birch who overturned Nurse Practitioner Smith's dietary order; and (4) Nurse Practitioner Smith who wrote the dietary order specifying that he was allergic to seafood, but disregarded Gakuba's medical needs when he told her that he was still being served seafood. (Doc. 13, p. 4).

## Count 2

Civil conspiracy claims are cognizable under Section 1983. *Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015). A plaintiff must show that the defendants reached an agreement to deprive him of his constitutional rights, and overt acts taken in furtherance of the same actually deprived him of those rights. *Id.* (citation omitted). Like all other claims, a civil conspiracy claim requires some factual underpinning. Gakuba's conspiracy allegations rely on vague assertions and legal conclusions in support of his claims. *See Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009). He claims that Defendants "conspired to deny/violate rights/laws by denying completely grievance(s)." (Doc. 13, p. 6). "Merely asserting that a conspiracy existed" does not fulfill Gakuba's burden of alleging enough facts to suggest "that the defendants reached a meeting of the minds." *Evers v. Reak,* 21 F. App'x 447, 450 (7th Cir. 2001) (citations omitted). Count 2 shall therefore be dismissed without prejudice against all defendants for failure to state a claim.

## Count 3

To state a claim for unconstitutional discrimination, Gakuba must allege that (1) he was a member of a protected class; (2) he was treated differently from a similarly situated member of an unprotected class; and (3) the defendants were motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). Gakuba, however, makes no such claim.

The Seventh Circuit Court of Appeals also allows equal protection claims to proceed on a "class-of-one" theory. *See Forgue v. City of Chi.,* 873 F.3d 962, 968 (7th Cir. 2017). Absent discrimination based on membership in a protected class, an equal protection claim may arise where a plaintiff is treated differently from other prisoners with no rational basis. *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016).

Other than claiming there was an equal protection violation, the First Amended Complaint does not allege any facts alleging discriminatory behavior on the behalf of Defendants, and so Count 3 is dismissed. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Brooks,* 578 F.3d at 581.

**Count 4**

"The Constitution mandates that prison officials provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'" *Smith v. Dart,* 803 F. 3d 304, 312 (7th Cir. 2015) (quoting *French v. Owens,* 777 F. 2d 1250, 1255 (7th Cir. 1985)).

Count 4 will proceed against Henderson and John Doe Dietary Director, who continued to serve Gakuba seafood causing him to go without meals and Nurse Practitioner Smith, whom he informed he was still being serve seafood, but disregarded his complaints. *See Williams v. Schueler*, 436 F. App'x 687, 689 (7th Cir. 2011).

Count 4 will be dismissed as to Health Directors George and Dr. Birch. Although Gakuba claims that George and Dr. Birch overturned Nurse Practitioner Smith's diet order, there are no allegations in the First Amended Complaint suggesting that these Defendants knew that he was continually being served seafood and therefore, going without meals.

7

**Counts 5 and 6**

Counts 5 and 6 arise under Illinois state law. Where a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a). Gakuba's state claims share a sufficient factual connection with his federal claim, and thus, the Court will exercise supplemental jurisdiction over the state claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008) (a loose factual connection between the federal and state claims is generally sufficient).

In Illinois, in order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)).

Other than stating that Defendants are grossly negligent in serving him seafood (Doc. 13, p. 7), Gakuba provides no further explanation of this claim, most notably duty of care. As previously mentioned, conclusory statements, such as those pertaining to negligence, do not meet the pleading standards set forth in *Twombly* and Federal Rule of Civil Procedure 8. *See Twombly*, 550 U.S. at 555. Accordingly, Count 5 shall be dismissed without prejudice.

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion...calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla. 1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will

cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988); *see also Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490 (citations omitted).

The allegation that Defendants denied Gakuba's grievances resulting in anxiety, insomnia, breakdowns, and migraines does not rise to the level of "extreme and outrageous" conduct that would support a claim for intentional infliction of emotional distress. Therefore, Count 6 is dismissed without prejudice.

**Count 7**

To state a claim for retaliation under the First Amendment, a plaintiff must allege that a "prison official retaliated against him for exercising a constitutionally protected right." *Pearson v. Welborn*, 471 F.3d 732, 738 (7th Cir. 2006). *See also Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012).

Count 7 will proceed against Henderson, who Gakuba claims served him spoiled food and threatened to issue false disciplinary tickets because Gakuba had filed suit against him, but will be dismissed against John Doe Dietary Director, Serina Lane, Sarah Robertson, and Matthew Swells. Gakuba claims that these Defendants condoned the retaliation by doing nothing to stop it. (Doc. 13, p. 7). It appears that Gakuba is attempting to hold these Defendants liable because they denied his grievances. (Doc. 13, p. 4). "Public officials do not have a free-floating obligation to put things to rights[.]" *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009). Absent any personal involvement in the underlying deprivation of Gakuba's constitutional rights, the denial of his grievances states no claim for relief. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who

9

simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). As such, Count 7 is dismissed against John Doe Dietary Director, Serina Lane, Sarah Robertson, and Matthew Swells.

**IDENTIFICATION OF UNKNOWN DEFENDANT AND OFFICIAL CAPACITY CLAIMS**

As previously noted, Gakuba will be allowed to proceed with Counts 1 and 2 against John Doe Dietary Director, but this individual must be identified with particularity before service of the First Amended Complaint can be made. Gakuba will have the opportunity to engage in limited discovery to ascertain the identity of this individual. *Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Matthew Swells, the Warden of Vienna, will remain a defendant in his official capacity only and shall be responsible for responding to discover aimed at identifying the unknown defendant. Once the name of John Doe Dietary Director is discovered, Gakuba shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the First Amended Complaint.

Gakuba asserts his claims against the remaining defendants in their official and individual capacities. Because state officials named in their official capacities may not be sued for monetary damages, *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989), and Defendant Swells remains a party in his official capacity, allowing Gakuba to proceed with an official capacity claim against the other Defendants for injunctive relief would be redundant. *See Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001). Therefore, the official capacity claims against Henderson, John Doe Dietary Director, Smith, George, and Dr. Birch will be dismissed with prejudice.

**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

As previously noted, Gakuba has filed two motions entitled "Motion for Equitable Relief: TRO, Preliminary and Permanent Injunction, Declaratory Judgment." (Docs. 5 and 14[5]). He asks the Court for an immediate transfer back to Robinson Correctional Center ("Robinson"). (Doc. 5 at p. 3; Doc. 14 at p. 8).

There are significant differences between a temporary restraining order ("TRO") and a preliminary injunction. A TRO can be issued without notice to the party to be enjoined, but it may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). Further, a TRO may be issued without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Without expressing any opinion on the merits of any of Gakuba's other claims for relief, the Court concludes that a TRO should not be issued in this matter. In the First Amended Complaint and Motions for Equitable Relief, Gakuba claims that Vienna serves him fish three to four times a week and sometimes twice a day or for two consecutive days leading to starvation and malnourishment. (Doc. 5, p. 1; Doc. 13, p. 2). These vague assertions of starvation and malnourishment from missing meals each week are not sufficient to clearly demonstrate that he will suffer immediate and irreparable harm before Defendants can be heard in opposition.

---

[5] The second motion for emergency injunctive relief, Doc. 14, alleges the same claims and is identical to the First Amended Complaint, Doc. 13.

Furthermore, Gakuba's requested relief of a transfer to Robinson intrudes too far upon the powers of the state to run its own penal system. The Prison Litigation Reform Act requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode,* 423 U.S. 362, 379 (1976) Accordingly, the requests for a TRO are **DENIED** at this time.

Gakuba also seeks a preliminary injunction. In contrast to a TRO, a preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (citations omitted); *see also Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir. 1999).

Gakuba's request for a preliminary injunction will remain pending until Defendants have been served. Defendants are ordered to respond to the request for a preliminary injunction within **14 days** of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the motions requesting a preliminary injunction.

Finally, the Court notes that there must be "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Daniels v. Dumsdorff,* No. 19-cv-00394-NJR, 2019 WL 3322344 at *1 (S.D. Ill., July 24, 2019)(quoting *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir. 1994)). Within Gakuba's Motion for Equitable Relief (Doc. 5), he includes claims regarding involuntary prison transfer, denial of access to courts, and deliberate indifference to back pain. (Doc. 5, pp. 2-3). As these claims are outside the scope of this lawsuit, which only pertains to his allergy condition and the provision of meals, any requests for injunctive relief regarding these additional allegations are **DENIED**. If Gakuba wishes to pursue emergency injunctive relief for the unrelated claims alleged, he should file a separate motion in the appropriate severed case seeking a temporary restraining order or preliminary injunction under Rule 65.

### MOTION FOR RECRUITMENT OF COUNSEL

Gakuba has also filed a Motion for Recruitment of Counsel (Doc. 4), which will be denied at this time.[6] In the Motion, Gakuba indicates that he has sent a number of letters to attorneys seeking representation. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se,* Gakuba indicates that on previous occasions Robinson and Vienna have destroyed his legal documents, and Vienna only allows him two to four hours per week in the law library. (Doc. 4, pp. 2, 3). Nonetheless, the Court finds that Gakuba can proceed *pro se,* at least for now. His pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Furthermore, given the early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013)("[U]ntil the defendants respond to the

---

[6] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

13

complaint, the plaintiff's need for assistance of counsel…cannot be gauged."). Defendants have not yet been served, nor has a discovery schedule been entered. Thus, counsel is not needed at this early stage. Gakuba may renew his request for the recruitment of counsel at a later date.

**DISPOSITION**

**IT IS ORDERED** that the First Amended Complaint survives screening pursuant to Section 1915A. **Count 1** proceeds against **Henderson, John Doe Dietary Director, Smith, George,** and **Birch**. **Count 4** proceeds against **Henderson, John Doe Dietary Director,** and **Smith,** but is **DISMISSED** against **George** and **Birch**. **Count 7** proceeds against **Henderson**, but is **DISMISSED** against **John Doe Dietary Director, Lane, Robertson,** and **Swells**. **Counts 2, 3, 5,** and **6** are **DISMISSED** without prejudice. The official capacity claims against **Henderson, John Doe Dietary Director, Smith, George,** and **Dr. Birch** are **DISMISSED** with prejudice.

Because there are no other claims against them, and for the reasons stated, **Vienna Prison, IDOC, Lane, Robertson, Bayler,** and **Jeffrys** are **DISMISSED** without prejudice from this action. The Clerk of Court is **DIRECTED** to terminate them from the Case Management/ Electronic Case Filing ("CM/ECF") system. The Clerk is further **DIRECTED** to change Defendant Lane's name in accordance with footnote 1. **Swells** shall remain a defendant in his official capacity only for the purposes of identifying the unknown defendant and implementing any injunctive relief that is ordered.

**IT IS ORDERED** that the requests for a temporary restraining order are **DENIED** without prejudice (Doc. 4, 13, 14), but the requests for a preliminary injunction regarding Gakuba's seafood allergy and the receipt of medically appropriate meals are **DEFERRED**. Defendants are **ORDERED** to respond to the requests for a preliminary injunction within **14 days** of service of the pleadings in this case.

**IT IS ORDERED** that the Motion for Recruitment of Counsel (Doc. 4) is **DENIED**

without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **Henderson, Smith, George, Birch,** and **Swells** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, Motions for Equitable Relief (Docs. 5 and 14), and this Memorandum and Order to each defendant's place of employment as identified by Gakuba. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Gakuba, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on **John Doe Dietary Director**, until such time as Gakuba has identified him or her by name in a properly filed motion for substitution. Gakuba is **ADVISED** that is his responsibility to provide the Court with the name and service address for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this**

**Merit Review Order.**

If judgment is rendered against Gakuba, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, whether or not an *in forma pauperis* application is granted. 28 U.S.C. § 1915(f)(2)(A).

Finally, Gakuba is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 7, 2020**

*[signature]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Gakuba is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Gakuba need not submit any evidence to the Court at his time, unless otherwise directed by the Court.