| | |
|---|---|
| PETER GAKUBA, #M52946,       Plaintiff, v. LARRY HENDERSON, GRETA SMITH, PENNY GEORGE, DR. BIRCH, CHRIS GOTWAY,[1] and TERRY GRISSOM,       Defendants. | Case No. 19-cv-01273-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case was severed from *Gakuba v. Swells et al.*, No. 19-cv-01081-SMY, on November 19, 2019. (Doc. 1). It contained the claim designated as Count 6 in the original case, described as an Eighth Amendment deliberate indifference claim against Defendant Henderson for refusing to place Gakuba on a no-seafood diet despite his allergies. Along with Count 6, Gakuba's Motion for Equitable Relief requesting a temporary restraining order and preliminary injunction was filed in this case. (Doc. 5). On December 30, 2019, Gakuba filed a First Amended Complaint, along with another motion for emergency injunctive relief. (Doc. 13 and 14). The Court conducted a preliminary review of the First Amended Complaint, under 28 U.S.C. §1915A, and issued a Merit Review Order allowing Gakuba to proceed with the following claims: Eighth Amendment deliberate indifference

---

[1] Now that Defendants Henderson and Gotway have identified themselves by their proper names in their response to the motions for preliminary injunction (Doc. 39), the Clerk of Court is directed to correct the docket to reflect their proper names: Larry Henderson and Chris Gotway.

claim for refusing to place him on a no-seafood diet, despite his allergies (Count 1); Eighth Amendment claim of cruel and unusual punishment for serving him seafood three to four times a week resulting in him missing meals and causing malnourishment (Count 4); and First Amendment claim for retaliating against him for filing lawsuits (Count 7). (Doc. 17). The Court denied Gakuba's requests for a temporary restraining order, but ordered Defendants to respond to his requests for a preliminary injunction. (*Id.* at p. 12).

Defendants filed a response on February 19, 2020 (Doc. 39), and Gakuba filed a reply on March 2, 2020 (Doc. 42). Gakuba filed a third motion for equitable relief, including a temporary restraining order and preliminary injunction on March 9, 2020 (Doc. 46). Also pending before the Court is Gakuba's motion for a court ordered transfer from Vienna Correctional Center ("Vienna") to Robinson Correctional Center ("Robinson") (Doc. 23), a motion to compel discovery (Doc. 41), a motion for summary judgment (Doc. 47), and a motion for judgment on the pleadings (Doc. 48). For the following reasons the Court denies the motions.

## BACKGROUND

In the First Amended Complaint (Doc. 13) and all three Motions for Equitable Relief (Docs. 5, 14, 46),[2] Gakuba alleges that he has a documented seafood allergy. (Doc. 13, p. 2; Doc. 5, p. 1). Upon his arrival at Vienna, he spoke with the dietary supervisor, Henderson, about his seafood allergy. (Doc. 13, p. 3). Gakuba was placed on a kosher diet, which includes the options of prepackaged turkey breast, chicken breast,

---

[2] Gakuba's third motion for equitable relief is very similar to the previous two but does include new allegations. Regardless of whether this motion is actually a new request for emergency injunctive relief or a sur-reply, which is not accepted, *see* SDIL Local Rule 7.1(g), the Court will consider the motion now, along with the other pending motions.

Salisbury steak, spaghetti, or fish fillet. (*Id.* at p. 4). On November 1, 2019, he was served fish for two successive days. (Doc. 5, p. 1). Gakuba met with Nurse Practitioner Smith regarding his allergy, who issued an order to the Vienna dietary services to stop serving him fish. (*Id.*). He continued, however, to receive the fish option at meals. (*Id.*). Gakuba met with Smith again, who told him that Healthcare Director George, with the agreement of Dr. Birch, overruled Smith's order. (*Id.* at p. 2). Gakuba sought to meet with Chris Gotway, the Dietary Director. Gotway told Henderson to show Gakuba the Illinois Department of Corrections ("IDOC") regulations. (Doc. 13, pp. 3-4). Gakuba continues to be served seafood multiple times a week. (*Id.* at p. 2; Doc. 46, p. 4). Henderson has told Gakuba that he will not stop serving him seafood because of labor costs in food preparation. (*Id.* at p. 3). After filing this lawsuit, Henderson began to retaliate against Gakuba and gave him spoiled juices, filthy lettuce, rotten apple, waterlogged bagels, smashed crackers, and once a spider in his cereal. (*Id.* at pp. 4-5). Henderson also threatened to file false disciplinary tickets against him. (*Id.* at p. 5).

In their response (Doc. 39), Defendants claim that on November 1, 2019, Gakuba self-reported a seafood allergy to a nurse practitioner who wrote a therapeutic diet order indicating that he was allergic to seafood. (*Id.* at p. 5). The nurse practitioner wrote an order for a nurse to notify dietary of the allergy. The nurse did not send the original therapeutic diet order, but rewrote the order and sent that document to dietary. (*Id.*). Because the order sent was not signed by a physician, physician's assistant, nurse practitioner, or dentist, Gotway, Food Services Program Manager, was unable to implement the dietary order and emailed Penny George, Health Care Unit Administrator, asking her about the discrepancies in the signature. (*Id.* at p. 7). George

then contacted Dr. Birch who told her to disregard the order. (*Id.* at p. 5). Dr. Birch met with Gakuba on February 7, 2020, to discuss food allergies. (*Id.* at p. 7-8). Defendants allege that during the meeting Gakuba denied having been seen by medical for a fish allergy since he was incarcerated in 2015 and also declined to take an allergy test offered by Dr. Birch. (*Id.* at p. 8).

Defendants argue that Gakuba cannot obtain injunctive relief because he is not likely to succeed on the merits of his claims. First, he has not demonstrated that his medical condition was objectively serious necessary to show deliberate indifference. (*Id.* at p. 8). While a food allergy can be a serious medical need, Defendants argue that Gakuba's medical records indicate that his seafood allergy is only self-reported and that on February 7, 2020, he was evaluated by Dr. Birch and declined allergy testing. (*Id.*). Additionally, his commissary records from Robinson show that he purchased tuna on two separate occasions in 2015. (*Id.* at p. 6). Second, because he does not have a medically documented allergy, Gakuba cannot show that Henderson and Gotway subjected him to cruel and unusual punishment by continuing to serve him seafood meals. (*Id.* at p. 9). As the dietary supervisor and director at Vienna, Henderson and Gotway acted pursuant to the Medical Director's orders, and there is no evidence that they acted maliciously or with an intent to punish or injure. (*Id.* at p. 9-10).

Finally, Defendants argue that Gakuba cannot claim that he is likely to suffer irreparable harm. His claims that he is dropping weight and is under 140 pounds is not supported by the medical records, which record that his weight ranges from 150 to 163 pounds while at Vienna. (*Id.* at p. 10).

In reply, Gakuba argues that a nurse practitioner did sign the original therapeutic

diet order, and the fact that it was misprocessed is evidence of malfeasance. (Doc. 42, p. 2). He claims that the commissary receipts from Robinson are false and should have been submitted with carbon copies of the register receipts and his signature. (*Id.* at p. 3). He also states that the records indicating that his weight has been between 150 to 163 pounds are unreliable because of the inaccurate scales at Vienna, which can vary by 5 to 10 pounds. (*Id.* at p. 4). He not does dispute that his allergy is self-reported and instead argues that self-reporting is indispensable to proper medical diagnosis. (*Id.* at p. 5). He further argues that Dr. Birch's suggestion that there is a blood test for every allergy known to humanity is "nonsense." (*Id.* at p. 5).

Gakuba further alleges that on February 3, 2020, he was seen by the director of mental health at Vienna because he appeared to have lost a lot of weight. (*Id.* at p. 18). He was weighed at 155 pounds on an old cheap scale while fully clothed wearing boots. (*Id.*). During his appointment with Dr. Birch on February 7, 2020, Gakuba claims that she stated she would authorize his "special diet" if he provided a medical doctor's note and that blood tests are conclusive for testing all known allergies. (*Id.*). He informed Dr. Birch that he would consult with family doctors. (*Id.*).

## MOTIONS FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the

burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

The Court finds that Gakuba is not entitled to a preliminary injunction at this time, as he has not demonstrated a likelihood of success on the merits or that he will suffer irreparable harm absent a Court ordered injunction. As Defendants state and Gakuba does not refute, there is no seafood allergy documented in his medical record, other than when he self-reported the allergy to medical staff at various times. Gakuba was given the

opportunity to be tested for his allergy and refused, stating he would consult with his own personal doctor as opposed to Dr. Birch. (*See* Doc. 42, p. 19). Based on these circumstances, it remains unclear whether he has a seafood allergy and whether such allergy could be considered an objectively serious medical condition. *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (a serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."). Furthermore, given the pleadings, the Court cannot find that Defendants acted with deliberate indifference to Gakuba's self-reported allergy. Although the original therapeutic diet order signed by a nurse practitioner was not properly submitted, George and Gotway further reviewed the order and Dr. Birch, the medical director, determined that the order should be disregarded and did not issue a new one. Gakuba's disagreement with Dr. Birch on the accuracies of an allergy test and the sufficiency of self-reporting in order to receive a therapeutic diet order does not establish deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) ("Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference.") (citations omitted). Accordingly, he has not demonstrated a likelihood of success on the merits of his claims. *See Hall-Bey v. Cohn,* 86 F. App'x 200, 201 (7th Cir. 2004) (holding that failure to provide a pork-free diet prescribed by a physician based on the prisoner's request did not violate the Eighth Amendment).

Furthermore, Gakuba has not demonstrated that he will suffer irreparable harm without a preliminary injunction. By his own admission, if he submits to an allergy test at Vienna or produces evidence of a seafood allergy documented by a doctor then Dr.

Birch will issue a therapeutic diet order. (*See* Doc. 46, p. 4). As he has been given an avenue to obtain the relief requested, he will not suffer irreparable harm without interim relief issued by the Court.

**MOTION FOR COURT ORDERED PRISON TRANSFER**

As Gakuba has not made the clear showing necessary to warrant the drastic relief of a preliminary injunction, the motion requesting to be transferred from Vienna to Robinson Correctional Center is **DENIED**. (Doc. 23).

**MOTION TO COMPEL DISCOVERY**

Gakuba filed a motion to compel discovery arguing that Defendants have only produced pieces of records and requests a complete record. (Doc. 41). He asks the Court to compel Defendants to handover various records. Defendants filed a response in opposition stating that Gakuba has not submitted a discovery request and that his motion is premature. (Doc. 44).

To the extent he is requesting the documents in relation to his motions for emergency injunctive relief, the motion is denied as moot. As discovery in this case has not yet commenced, any discovery requests relating to his underlying claims are denied as premature. Gakuba cannot conduct discovery until a pretrial scheduling and discovery order has been entered. Once discovery commences, Gakuba must serve his discovery requests on Defendants and may file a motion to compel only if (1) Defendants fail to respond to his requests; and (2) after he attempts to resolve the dispute informally. *See* FED. R. CIV. P. 37.

**MOTION FOR SUMMARY JUDGMENT AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Gakuba has filed a motion for summary judgment (Doc. 47) and a motion for

judgment on the pleadings (Doc. 48), requesting a hearing for both motions.

The Court finds that these motions are also premature. Generally, "[s]ummary judgment should not be entered 'until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion.'" *Grayson v. O'Neill,* 308 F.3d 808, 815 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986). *See also Smith v. OSF HealthCare Sys.,* 933 F.3d 859, 866 (7th Cir. 2019) (emphasizing "the importance of allowing a party the opportunity to take meaningful discovery before granting summary judgment"). Furthermore, the Court notes that "[t]he Prison Litigation Reform Act of 1995 ("PLRA") mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S.Ct. 1850, 1854-55 (2016) (citing 42 U.S.C. § 1997e(a)). Although exhaustion "is an affirmative defense with the burden of proof on the defendants," *Maddox v. love,* 655 F.3d 709, 720 (7th Cir. 2011), it is still a prerequisite to filing a suit.

Furthermore, Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The Rule "permits a party to move for judgment after the complaint *and answer* have been filed by the parties." *Buchanan-Moore v. Cty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009) (emphasis added).

Here, not only has discovery not been conducted, but not all Defendants have answered the First Amended Complaint. If Defendants raise Gakuba's failure to exhaust administrative remedies as an administrative defense, then the Court's procedure is to stay discovery on the merits and enter a scheduling order regarding initial

disclosures and the dispositive motion on failure to exhaust. As the pleadings have not been closed and discovery has not commenced, the motions are denied without prejudice.

## DISPOSITION

For the reasons set forth above, the Motions for Equitable Relief (Docs. 5, 14, 46), the Motion for Court Ordered Prison Transfer (Doc. 23), the Motion to Compel Discovery (Doc. 41), the Motion for Summary Judgment (Doc. 47), and the Motion for Judgment on the Pleadings (Doc. 48) are **DENIED** without prejudice.

The Clerk of Court is **DIRECTED** to change the names of Defendants Henderson and Gotway in accordance with footnote 1.

**IT IS SO ORDERED.**

**DATED:** March 11, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**