IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETER GAKUBA,<br><br>      Plaintiff,<br><br>v.<br><br>LARRY HENDERSON,<br>GRETA SMITH,<br>PENNY GEORGE,<br>DR. BIRCH,<br>CHRIS GOTWAY,<br>TERRY GRISSON,[1]<br><br>      Defendants. | Case No. 19-cv-01273-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on several motions filed by all parties: motions for summary judgment on the issues of failure to exhaust administrative remedies filed by all Defendants (Docs. 93, 96), motion to dismiss filed by Defendants Birch and Smith, and two motions to strike filed by Plaintiff Gakuba (Docs. 149, 152). For the following reasons, the Court grants the motions for summary judgment, denies the motion to dismiss as moot, and denies the motions to strike.

SUMMARY JUDGMENT

*I. Background*

On October 4, 2019, Plaintiff Peter Gakuba filed suit in *Gakuba v. Swells*, No. 19-cv-01081-SMY, alleging that Defendant Larry Henderson and others violated his constitutional rights under 42 U.S.C. § 1983, while he was in the custody of the Illinois Department of Corrections

---

[1] The Clerk of Court is directed to modify the docket to reflect the correct spelling of Defendant Terry Grisson's name as indicated in the motion for summary judgment. (Doc. 93).

("IDOC").

On November 19, 2019, *Gakuba v. Swells* was severed into separate actions, and as a result, this case was opened. It originally contained one claim against Defendant Henderson for refusing to place Gakuba on a no-seafood diet despite his allergies while he was incarcerated at Vienna Correctional Center, designated as Count 6 in *Gakuba v. Swells*. (Doc. 1). Gakuba was instructed to notify the Court if he wished to proceed with the case by January 23, 2020. (Docs. 6, 9, 12). On December 30, 2019, Gakuba filed the First Amended Complaint. (Doc. 13). Following a preliminary review of the First Amended Complaint, Gakuba is proceeding with the following claims:

**Count 1:** Eighth Amendment deliberate indifference claim against Larry Henderson, Chris Gotway, Greta Smith, Penny George, and Dr. Birch for refusing to place Gakuba on a no-seafood diet despite his allergies.

**Count 4:** Eighth Amendment cruel and unusual punishment claim against Larry Henderson, Chris Gotway, and Greta Smith for serving Gakuba seafood three to four times a week resulting in him missing meals and causing malnourishment.

**Count 7:** First Amendment claim against Larry Henderson for retaliating against Gakuba for filing lawsuits.

(Doc. 17). The Warden of Vienna, Terry Grisson, is a defendant in his official capacity only for the purpose of implementing any injunctive relief. (Docs. 17, 45).

Defendants filed for summary judgment arguing that Gakuba failed to exhaust his administrative remedies prior to commencement of this suit, as required pursuant to 42 U.S.C. § 1997e(a). Defendants argue that the only relevant grievance to the issues in this case in which Gakuba properly followed all grievance procedures is a grievance dated September 9, 2019. (Docs. 94, 97). In the September 9 grievance, Gakuba grieves that Defendant Henderson would not provide him with a special diet. The grievance was originally filed as an emergency, determined

to be nonemergent by the Vienna Warden on September 11, 2019, and returned to Gakbua. (Doc. 94-1, p. 94). Gakuba then sent the grievance directly to the Administrative Review Board ("ARB"), and the grievance was returned to him with the direction for Gakuba to provide additional documentation. (*Id.* at p. 93). A second copy of the grievance was received by the ARB, with responses from the counselor, grievance officer, and warden. The ARB denied the grievance on November 1, 2019. (*Id.* at p. 78-81).

Defendants George, Gotway, Henderson, and Grisson ("IDOC Defendants") argue that the September 9 grievance cannot serve to exhaust Gakuba's claims against Henderson regarding his diet (Counts 1 and 4) because the ARB reached a final determination on the grievance after Gakuba initiated his lawsuit in the original case, No. 19-cv-01081-SMY, on October 4, 2019, alleging the same issue.

The IDOC Defendants further argue that the September 9 grievance does exhaust the new claims alleged in the First Amended Complaint filed in this case on December 30, 2019, regarding Henderson's retaliation (Count 7) or the claims against Gotway, George, or Grisson (Counts 1 and 4). The September 9 grievance does not mention nor describe Gotway, George, or Grisson and does not include complaints of retaliation.

Likewise, Defendants Dr. Birch and Smith ("Wexford Defendants") argue that September 9 grievance does not serve to exhaust the claims against them. (Doc. 97). The grievance does not mention Dr. Birch or Smith, and at that time, Gakuba had not been seen by either Defendant.

In his responses, Gakuba argues that because he was being deliberately starved, he did not have exhaust his administrative remedies prior to filing suit. He states that willful and deliberate starvation is not a "grievable offense." (Doc. 147, p. 2, 8-9; Doc. 148, p. 2, 10) (citing *Murphy v. Raoul,* 380 F. Supp. 3d 731 (N.D. Ill. Mar. 31, 2019; *Rodriguez v. Cty. of Los Angeles,* 891 F. 3d 776 (9th Cir. 2018)). He contends that even if he was required to grieve, the initiation of the lawsuit

was December 30, 2019, when he filed the First Amended Complaint in this case, which he did so at the Court's direction after his original case was severed and this case opened. (Doc. 147, p. 9-10; Doc. 148, p. 11-13). Gakuba argues that a grievance dated October 22, 2019 was fully adjudicated by the ARB on October 31, 2019, and serves to exhaust his claims. Despite the ARB's conclusion that the grievance was untimely, the October 22 grievance was timely filed within 60 days of his arrival at Vienna. Finally, Gakuba argues that he summary judgment should not be granted because he has not had access to his legal documents or medical records.

## II. Legal Standards

### a. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id*. at 742.

### b. Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

    c. **Grievance Procedures**

    The grievance procedure for IDOC inmates is laid out in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. If the inmate's grievance does not involve an emergency, the inmate must first file a grievance first with the Counselor within 60 days of the discovery of an incident. *Id.* at § 504.810(a). The grievance form must contain factual details regarding what happened, when, where, and the name of each person who involved in the complaint. *Id.* at 504.810(c). While this provision does not preclude an offender from filing a grievance when the

names of individuals are not known, he or she must include as much descriptive information about the person as possible. *Id.*

Grievances that are unable to be resolved through the Counselor are then sent to the Grievance Officer. *Id.* at § 504.820(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The Chief Administrative Officer ("CAO") then reviews the findings and recommendation of the Grievance Officer and advises the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the CAO, he can file an appeal the decision to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The appeal must be received by the ARB within 30 days after the date of the CAO's decision. *Id.* The ARB then must submit to the Director a written report of its findings and recommendations. *Id.* at § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id*. at § 504.850(e).

### III. Analysis

The Court finds that Gakuba did not fully exhaust his claims as to all Defendants prior to initiating this lawsuit by filing the September 9 grievance or the October 22 grievance. Furthermore, Gakuba was not exempted from meeting the exhaustion requirement under the PLRA because he was alleging starvation.

  a. **September 9 Grievance and October 22 Grievance**

The September 9 grievance is the only grievance pertaining to allegations in this case that was fully grieved according to IDOC procedures. In the grievance, Gakuba states that he met with

Defendant Henderson on September 4, 2019, about his food allergy, and Henderson told him that "Vienna does not regard specialty dietary needs" even for inmates with food allergies. (Doc. 94-1, p. 81). After filing the grievance with a response from the Counselor and the Grievance Officer and receiving a determination from the CAO, the grievance was ultimately denied by the ARB on November 1, 2019. (*Id.* at p. 78-80). Gakuba filed the original lawsuit, *Gakuba v. Swells,* in which he claimed Henderson rejected his request for "no seafood meals" on October 4, 2019, prior to the final determination by the ARB. *See Gakuba v. Swells* (Doc. 1, p. 13). He then filed the First Amended Complaint in this case on December 30, 2019. (Doc. 13).

Gakuba argues that his case commenced on December 30, 2019, when he filed the First Amended Complaint, not October 4, 2019. He asserts that the case did not commence until Defendants were served and the filing fee paid, which did not occur until after he filed the First Amended Complaint. In *Ford v. Johnson,* the Seventh Circuit explicitly rejected the argument that for the purpose of exhaustion a case does not commence until a prisoner has paid the filing fee and the defendants were served. The Seventh Circuit ruled that "[n]either fee collection nor notice to the adversary is at issue when applying § 1997e(a)." 362 F. 3d at 399. "[A]n action is 'brought' for the purposes of §1997e(a) when the complaint is tendered to the district clerk." *Id.* at 400. Therefore, the date a plaintiff submits a complaint to the Court for filing is the operative date in determining exhaustion, regardless of "whether the complaint was screened at a later date pursuant to 28 U.S.C. § 1915A, whether Plaintiff paid his filing fee or was granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915 after submitting his complaint, or whether the action is severed pursuant to the PLRA." *Washington v. Goldsborough,* No. 13-cv-613-NJR-DGW, 2015 WL 4624167, at *7 (S.D. Ill. Aug. 3, 2015). *See also Gakuba v. Pannier*, No. 19-cv-1275-NJR, 2021 WL 1165114, at *3 (S.D. Ill. Mar. 26, 2021) (in dismissing the same argument raised by Gakuba, the Court found "[a]llowing Gakuba to exhaust administrative remedies based on the Court's

severance of a case would be against Seventh Circuit precedent and likely would further encourage inmates to bring multiple unrelated claims against multiple defendants.").

For these reasons, the September 9 grievance cannot serve to exhaust Counts 1 and 4 against Henderson for refusing to place Gakuba on a non-seafood diet. In the original complaint filed on October 4, 2019 in *Gakuba v. Swells,* Gakuba alleges that on September 4, 2019, Henderson rejected his request to be served non-seafood meals. (Doc. 2, p. 13). In the First Amended Complaint filed in this case after severance, Gakuba states that immediately upon his arrival at Vienna he notified Henderson of his food allergies, and Henderson refused to place him on a special diet. (Doc. 13, p. 3). While he rewords his allegations, he does not assert a new claim against Henderson regarding his diet.

The September 9 grievance also does not exhaust the new claims added in the First Amended Complaint against George, Gotway, Smith, and Birch, and the retaliation allegation against Henderson. The September 9 grievance does not contain any details regarding the alleged conduct by Defendants or that Gakuba was continually being served fish at meals and as a result, not eating. The facts grieved in the September 9 grievance are limited to one interaction with Henderson on September 4, 2019, the same day Gakuba arrived at Vienna. The primary purpose of exhaustion "is to alert the state to the problem and invite corrective action," *Turley v. Rednour,* 729 F. 3d 645, 649-50 (7th Cir. 2013) (internal citations and quotations omitted), and inmates must exhaust according to prison rules. *See Pozo,* 286 F.3d at 1025. The Illinois grievance procedures require that the grievance contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE 504.810(c). The September 9 grievance does not alert prison administration of an ongoing problems regarding his diet, nor does it comply with the Illinois Administrative Code and grieve the issues with sufficient

particularity. *See Santiago v. Anderson*, 496 F. App'x 630, 637 (7th Cir. 2012) ( "Since May 2003 the grievance procedures applicable to Illinois prisons have included a particularity requirement[.]").

The October 22 grievance exhaust also does not exhaust Gakuba's claims. Even if the October 22 grievance was timely filed according to IDOC grievance procedures, as Gakuba argues, the grievance does not address any of the issues alleged in this lawsuit regarding his request to receive non-seafood meals and denial of meals at Vienna. At the top of the grievance, Gakuba indicates that the issues grieved in the grievance occurred Robinson Correctional Center. (Doc. 94-1, p. 88). He checks the box "dietary" on the grievance form and states "no kosher or unkosher meals 7/2019-9/4/19." (*Id.*). In the October 22 grievance, Gakuba states that while incarcerated at Robinson and East Moline Correctional Center, he did not consistently receive prepackaged kosher meals. He specifically states in the grievance that it is timely filed within 60 days of the last date of the continuing violation, which is September 4, 2019, the date he was transferred to Vienna. (*Id.*). This grievance in no way relates to the current claims against staff at Vienna.

### b. Non-Grievable Offense

The Court is also not persuaded by the argument that Gakuba's claim of starvation is not a greivable offense.[2] The language of the PLRA does not provide for exceptions to the requirement that an inmate must exhaust his administrative remedies prior to filing a lawsuit for certain types

---

[2] In support of his argument that the alleged conduct of Defendants is not a greivable, Gakuba cites to *Murphy v. Raoul,* 380 F. Supp. 3d 731 (N.D. Ill. Mar. 31, 2019), *Rodriguez v. Cty. of Los Angeles,* 891 F. 3d 776, 793 (8th Cir. 2018), and *Lyons v. Dicus,* 663 F. App'x 498 (9th Cir. 2017). The decisions in *Murphy* and *Lyons* do not discuss the exhaustion requirement under the PLRA and are not applicable here. *See Lyons,* 663 F. App'x at 500 (finding that the court erred in dismissing an inmate's First Amendment retaliation claim with prejudice at screening); *Murphy,* 380 F. Supp. at 740 (ruling on summary judgment regarding the constitutionality of IDOC's mandatory supervised release program for sex offenders and discussing whether denial of a parole site is a greivable). In *Rodriguez,* the Nineth Circuit Court of Appeals found that the administrative remedies were effectively unavailable to the plaintiffs because they feared retaliation if they filed grievances. *Rodriguez,* 891 F. 3d at 792-93. Here, Gakuba is not claiming that his remedies were unavailable prior to filing this lawsuit, but rather, he did not have to use the administrative process because "torture by starvation to death" is not grievable. (*See* Doc. 147, p. 1-2, 8, 11, Doc. 151-1, p. 1-2).

of offenses, conduct, or claims. As the Supreme Court has repeated, "[t]here is no question that exhaustion is mandatory under the PLRA." *Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016) (quoting *Jones v. Bock,* 549 U.S. 199, 211 (2007)). While the administrative remedies must be available, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And the mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." *Id.* Accordingly, Gakuba was required to exhaust even though he was repeatedly being served seafood and unable to eat. The Court does not have judicial discretion to depart from the mandatory exhaustion regime established by the PLRA and create "non-grievable" offenses. *Id.*

c. **Access to Legal Records**

Lastly, Gakuba asserts that summary judgment should be denied because he does not have access to his legal documents. (Doc. 157, p. 6, 11). Previously, Gakuba informed the Court that he would be paroled at the end of April. He filed a motion for emergency equitable relief asking the Court to order that 17 of his legal document boxes be mailed to an attorney in Baltimore, Maryland at IDOC's expense. He argued that once released, he would be prejudiced in prosecuting his claims without his documents. The Court denied the motion, finding that the preliminary injunctive relief sought was not related to the underlying claims in this suit. (Doc. 133). In the motion for summary judgment, he states that not only is IDOC refusing to mail him his legal documents, but he has been denied his medical documents by Defense Counsel for the Wexford Defendants.

There is no evidence to indicate that IDOC's refusal to send Gakuba his legal boxes has hindered his ability to fully respond to the motions for summary judgment. As the Court has observed, Gakuba alleged in earlier motions that his personal documents relating to exhaustion of his remedies prior to filing this case had been destroyed while he was incarcerated at Vienna. (Doc. 146, p. 2-3). Thus, the lack of access to his legal boxes now that he has been released cannot have

prevented him from responding to the motions for summary judgment, if documents relating to this case were already lost or destroyed as Gakuba alleged.

It is also not clear why the documents that have been made available to him through the Court record[3] and initial disclosures[4] are not sufficient for filing a response. Gakuba previously contended that he needed his own records of handwritten grievances because the exhibits attached to Defendants' motions "contained material misrepresentations and omissions." (Doc. 141, p. 4). Finding that Gakuba has sufficient resources available to oppose the motions, the Court advised him that he may "dispute the reliability of Defendants' grievance exhibits, and inform the Court of specific grievances or documents that have been destroyed or confiscated by Vienna staff." (Doc. 146, p. 3). His contentions with the grievance record, as submitted by Defendants, do not alter the Court's decision. Gakuba argues that Defendants have omitted from the records documents that will show that Defendants falsely blamed his drastic weight loss on a hunger strike, rather than their deliberate denial of meals and that Birch quit working for Wexford in July 2021. (Doc. 147, p. 6). These documents from 2020 and 2021 may be relevant for the merits of this case, but they have no bearing on whether Gakuba exhausted prior to bringing suit in 2019.

Gakuba also states that the claim made by the IDOC Defendants that the "ARB records also contain multiple grievances ruled on by the ARB after the date Plaintiff filed his Amended Complaint as well as grievances that had been received by the ARB but not yet ruled on" is not supported by the record. (*Id.* at p. 6). He claims there is not one citation to a "purported post hoc grievance being reviewed and approved by the IDOC." (*Id.*). This claim is incorrect. The IDOC Defendants provided the record log from the ARB, which includes a list of grievances the ARB

---

[3] Gakuba has CM/ECF access, and the record contains hundreds of pages of grievances filed by all parties. (*See* Docs. 5, 42, 46, 47, 55, 94, 97, 99, 118).
[4] Gakuba confirmed that he had received 300-600 documents of initial discovery from Defendants Birch and Smith on September 18, 2020. (Doc. 103).

received from Gakuba beginning in 2016 through 2020. (Doc. 94-1, p. 1-3). They also filed copies of the grievances the ARB received but had not yet made a determination at the time of filing the motion for summary (*Id.* at p. 4-21) and copies of the grievances in which a determination was reached after the First Amended Complaint was filed (*Id.* at p. 22, 26, 32, 36, 39, 42, 45, 48, 51, 54, 57, 60, 65, 69, 72). Most importantly, they have provided copies of the grievances and determinations by the ARB of the two grievances relevant to this case, the September 9 grievance and the October 22 grievance. (*Id.* at p. 78-81, 87-88). Gakuba does not cite to any grievance missing from the record that he has properly grieved or to specific inadequacies in the grievances filed by Defendants as exhibits. Accordingly, the Court will not deny the motions for summary judgment because Gakuba does not have his legal boxes from Vienna.

As to the claim that he has not received his medical records, Gakuba does not explain how the delay in receiving medical records, which were not requested until May 27, 2021, prohibited him from opposing the motions for summary judgment in this case.[5] (Doc. 148-3, p. 1).

Therefore, for the reasons stated, the Court finds that Plaintiff Gakuba did not exhaust his available administrative remedies prior to bringing this suit, and the motions for summary judgment are grants.

## MOTIONS TO STRIKE

Gakuba asks the Court to strike the motion for summary judgment and attached exhibits filed by Defendants Birch and Smith and to issue sanctions pursuant to Rule 11. (Doc. 149). He argues that Defendants violated the HIPAA Qualified Protective Order by filing his personal

---

[5] The Court notes that in contrast to his argument he is being denied his medical records, Gakuba includes emails between himself and Defense Counsel for the Wexford Defendants demonstrating that as of June 18, 2021, Wexford was processing his request. (*See* Doc. 148-2, p. 1). Additionally, Wexford Defendants respond that the medical records were emailed to Gakuba the morning of June 24, 2021. (Doc. 150, p. 3).

medical records as exhibits to the motion for summary judgment. Because his privacy rights have been violated, the pleadings should be stricken and sanctions imposed.

Defendants have not violated HIPAA by filing Gakuba's medical records with the Court. The provisions of the Health Insurance Portability and Accountability Act ("HIPAA") "do not create a privilege against production or admission of evidence; they merely create a procedure for obtaining protected medical record in litigation." *U.S. ex rel. Camillo v. Ancilla Sys. Inc.*, 233 F.R.D. 520, 522 (S.D. Ill. Nov. 7, 2005) (citing *Nw. Mem'l Hosp. v. Ashcroft,* 362 F. 3d 923, 925–926 (7th Cir.2004)). *See also United States v. Bek,* 493 F. 3d 790, 802 (7th Cir. 2007) (holding that HIPAA does not give rise to a physician-patient or medical records privilege). The Defendants accessed Gakuba's medical records pursuant to a protective order consistent with the provisions of HIPAA, thus, there has been no HIPAA violation.

As to Gakuba's argument that his privacy rights have been violated, there is a presumption that documents affecting the disposition of ligation should be open to public view. *E.g., Nixon v. Warner Commc'n., Inc.,* 435 U.S. 598, 597 (1978); *In re Sprecht*, 622 F.3d 697, 701 (7th Cir. 2010); *Stone v. Univ. of Md. Med. Sys. Corp*., 855 F.2d 178, 182 (4th Cir. 1988). The Seventh Circuit has noted that when plaintiffs call "on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property…" *Union Oil Co. of Cal. v. Leavell,* 220 F. 3d 562, 567 (7th Cir. 2000). Gakuba has placed his medical condition at issue by filing this case, and it is not apparent why confidentiality is sought relative to his medical records filed with the Court over nine months ago. Gakuba has not asked the Court to seal the record or demonstrated good cause for doing so. Accordingly, the motion to strike the motion for summary judgment and for sanctions is denied. (Doc. 149).

The Court also denies Gakuba's motion to strike the reply brief to his response to the motion for summary judgment filed by Defendants Birch and Smith. (Doc. 152).

It has been observed in this district that:

> While it is true that reply briefs are disfavored, looked at broadly, a motion to strike a reply is disfavored just as much, if not more, than the reply brief itself. That is particularly applicable in cases like this where the motion to strike does not serve a purpose in refining the issues or aiding in a more expeditious resolution of the case. It merely generates more briefing that the Court must read and address.

*Eagle Forum v. Phyllis Schlafly's Am. Eagles,* No.16-CV-946-NJR, 2020 WL 374557, at *3 (S.D. Ill. Jan. 23, 2020). That is the case here. Gakuba's argument for striking the reply brief is "fair is fair." He reasons that because the Court previously struck a sur-reply he filed, the Court should also strike Defendants' reply brief. But as Gakuba recognizes by recounting Local Rule 7.1, the Local Rules do not treat replies and sur-replies the same. Reply briefs are allowed "in exceptional circumstances," while "[u]nder no circumstances will sur-reply briefs be accepted." (*Id.* at p. 1) (citing SDIL-LR 7.1(c)). Gakuba has presented no arguments that Defendants have not met the standard of demonstrating exceptional circumstances warranting a reply brief. Thus, the Court finds the reasons given by Defendants—misstatement of facts and law—are sufficient to warrant a reply. The motion to strike is denied.

## MOTION TO DISMISS

Defendants Smith and Birch filed a motion asking the Court to dismiss the case for lack of prosecution due to Gakuba's failure to respond to interrogatories related to the issue of exhaustion sent on June 26, 2020. (Doc. 121). Given that Defendants' motion for summary judgment is granted, the Court will not rule on the motion to dismiss and finds the issue moot.

## DISPOSITION

For the reasons stated above, the Court **GRANTS** the motion for summary judgment for failure to exhaust administrative remedies filed by Defendants George, Gotway, Henderson, and

Grisson (Doc. 93) and **GRANTS** the motion for summary judgment on exhaustion of administrative remedies (Doc. 96) filed by Defendants Birch and Smith.

The motion to dismiss for lack of prosecution (Doc. 121) filed by Defendants Birch and Smith is **DENIED as moot**.

The motions to strike filed by Plaintiff Gakuba are **DENIED.** (Doc. 149, 152).

This case is dismissed without prejudice for failure to exhaust. The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   July 26, 2021**

    _s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**